IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LESEL LOVE, JR., and GWENDOLYN
LOVE,

     Plaintiffs,

                                            CASE NO.: 1:21-cv-20934-FAM

vs.

WESTERN WORLD INSURANCE
COMPANY,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, WESTERN WORLD INSURANCE COMPANY ("WWIC"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.1 and 56.1, hereby moves this Court for entry of summary judgment in favor of WWIC and against Plaintiffs, Lesel Love, Jr. and Gwendolyn Love, and in support states as follows:

### SUMMARY OF THE ARGUMENT

Plaintiffs breached the Policy of insurance by failing to provide prompt notice as well as provide a Sworn Proof of Loss and other documentation in accordance with the insurance Policy at issue. The Policy specifically requires that in the event of a loss, prompt notice of the loss must be provided to WWIC. Plaintiffs provided late notice as a matter of law. The alleged loss occurred on September 10, 2017, as a result of Hurricane Irma. Plaintiffs waited over 22 months to provide WWIC with notice of the loss. Under Florida law, prejudice to WWIC is presumed given the late notice provided by Plaintiffs. The burden is on Plaintiffs to rebut the presumption of prejudice. However, Plaintiffs are unable to rebut this presumption because Plaintiffs made repairs prior to giving notice to WWIC, and thus hampered WWIC's ability to effectively

investigate the complete nature of the loss.  The prejudice of the late notice is compounded by Plaintiffs' refusal to comply with WWIC's multiple requests for an executed Sworn Proof of Loss and any supporting documentation, as required under the Policy.

Plaintiffs' recovery under the Policy in this commercial property damage claim is limited by several provisions and endorsements.  First, with respect to the claimed unrepaired damage, Plaintiffs cannot recover replacement cost value ("RCV"), but only actual cash value ("ACV") for potential repairs based both on the Policy language and Florida law interpreting similar provisions.  Notably, Plaintiffs have not disclosed an expert to testify as to either the RCV or ACV of any repairs.  Plaintiffs' rely entirely on their public adjuster, a lay witness to opine as to the cost of repairs.  Even if their public adjuster had been properly disclosed, he has provided neither a means to calculate ACV, nor an ACV figure.  Moreover, there is no record to establish the only amount Plaintiffs could be entitled to under the Policy.  This lack of evidence leaves Plaintiffs unable to prove their damages to a reasonable certainty as required under Florida law. Finally, Plaintiffs are not entitled to recover any costs for repairs required by any ordinance or law, as such costs were not incurred.

## MEMORANDUM OF LAW

### I.      Summary Judgment Standard.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (providing that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought").  "Genuine disputes of fact exist when the evidence is such that a reasonable jury could render a verdict for the non-movant."  *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (citing *Mann v. Taser Int'l,*

*Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009)).  Factual issues are genuine when they have a real basis in the record.  *Id.*  (citing *Mann*, 588 F.3d at 1303).

The moving party bears the initial burden of showing the court, by reference to portions of the record, including pleadings, discovery material, and affidavits, the basis for the motion and for its belief that there are no genuine disputes of material fact.  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffrey v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991); *Talat Enters., Inc. v. Aetna Cas. & Surety Co.*, 952 F. Supp. 773 (M.D. Fla. 1996).  "A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case."  *Talat*, 952 F. Supp. at 775.

The non-moving party must then "go beyond the pleadings" and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file" designate specific facts showing a genuine dispute of material fact.  *Celotex*, 477 U.S. at 324; s*ee also Garguilo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  Conclusory allegations based on subjective beliefs are not enough to show that a genuine issue of fact exists.  *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).  The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23.

## II.  <u>The Policy Terms are Clear and should be Given their Plain Meaning</u>.

In this diversity action, Florida law governs the analysis and interpretation of an insurance policy.  *Residences at Ocean Grande, Inc. v. Allianz Global Risks*, Case No. 07-22656-CIV, 2009 WL 7020044 (S.D. Fla. Sept. 9, 2009) (*citing Fernandez v. Bankers Nat'l Life Ins.*

*Co.*, 906 F.2d 559, 564 (11th Cir. 1990)).  A policy's plain language controls and a court must "not … give the contract any meaning beyond that expressed." *Walker v. State Farm Fire & Cas. Co.*, 758 So. 2d 1161, 1162 (Fla. 4th DCA 2000) (*citing Walgreen Co. v. Habitat Dev. Corp.*, 655 So. 2d 164, 165 (Fla. 3d DCA 1995)).  "[A] single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders." *Royale Green Condo Ass'n, Inc. v. Aspen Specialty Ins. Co.,* No. 07-21404-CIV, 2008 WL 2074383 *2 (S.D. Fla. May 14, 2008) (*citing Gen. Indem. Co. v. West Fla. Village Inn, Inc.*, 874 So. 2d 26, 30 (Fla. Dist. Ct. App. 2004)).

Ambiguous policy language, or policy language that is susceptible to more than one reasonable interpretation, will be construed in favor of the insured.  *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (internal citations omitted).  However, "simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous." *Id.* at 165 (*citing Eagle American Ins. Co. v. Nichols*, 814 So. 2d 1083, 1085 (Fla. 4th DCA 2002).

**III.** **The Policy Unambiguously Requires that Plaintiffs Provide WWIC with Prompt Notice of a Loss, as well as Provide a Signed Proof of Loss within 60 Days of WWIC's Request.**

The Policy at issue in this case contains the following conditions pertaining to notice of loss and providing a signed, sworn proof of loss:

    **E.  Loss Conditions**

* * *

      **3.  Duties In The Event Of Loss Or Damage**

        **a.** You must see that the following are done in the event of loss or damage to Covered Property:

* * *

**(2)** Give us prompt notice of the loss or damage.  Include a description of the property involved.

\* \* \*

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

\* \* \*

**COMMERCIAL PROPERTY CONDITIONS**

\* \* \*

**D.  LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

\* \* \*

(WWIC's Statement of Undisputed Material Facts (hereinafter "WWIC's SOF"), Ex. 1, Policy at 63-64; 70.)

Thus, as conditions precedent to filing a lawsuit in this case, Plaintiffs were required to provide WWIC with prompt notice of the Hurricane Irma damage, as well as provide a signed, sworn proof of loss within 60 days of WWIC's request.  As set forth below, Plaintiffs failed to comply with either of these post-loss conditions.

**IV.    As a Matter of Law, Plaintiffs Failed to Provide Prompt Notice of the Loss.**

Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.*, 2014 WL 2751037 (Fla. 2d DCA 2014).  The first step is to determine whether the insured provided timely notice.  *Id.*   Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted.  *Bankers Ins. Co. v. Macias*, 475 So. 2d at 1218.  The burden is "on the insured to show lack of prejudice where the

insurer has been deprived of the opportunity to investigate the facts." *Id.* at 1218; *see also Stark v. State Farm Fla. Ins. Co*., 95 So. 3d 285, 288 (Fla. 4th DCA 2012).

The Eleventh Circuit's opinion in *Yacht Club on the Intracoastal Condominium Ass'n v. Lexington Ins. Co.*, 599 Fed. Appx. 875 (11th Cir. 2015) is instructive on the issue of late notice. In *Yacht Club*, the insured property was damaged as a result of Hurricane Wilma on October 24, 2005.  The undisputed facts demonstrated that the Yacht Club Board ("the Board") was aware of the damage immediately after Hurricane Wilma, but believed that the repairs would not exceed the deductible amount of $100,000.  *Id.* at 877.   In March 2006, the Board imposed a $150,000.00 special assessment on the residents to pay for the Hurricane Wilma damage.  *Id.* When the insured finally reported the damage to the insurer on July 27, 2010, the insurer denied the insured's claim and the insured filed suit.  The insurer filed a motion for summary judgment arguing that the insured's notice was not "prompt" as a matter of law, and that the insured had not overcome the presumption of prejudice arising out of the late notice.  *Id.* at 878.  The district court granted Lexington's motion and the insured appealed.

On appeal, the insured argued that there was an issue of fact as to whether the notice to Lexington was "prompt" and whether it rebutted the presumption of prejudice.  *Id.*  The insured argued that since it gave notice within the five-year limitation period set forth in the policy it gave "prompt" notice.  The court disagreed and explained that although there is no "bright-line" rule under Florida law as to what constitutes prompt notice:

> under Florida law, "prompt," "as soon as practicable," "immediate," or comparable phrases have been interpreted to mean that notice should be given "with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case."

*Id.* (citing *State Farm Mut. Auto Ins. Co. v. Ranson*, 121 So. 2d 175, 181 (Fla. 2d DCA 1960)); *see also PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 Fed. Appx. 845, 848 (11th

Cir. 2014) (same).  The *Yacht Club* court acknowledged that the question of what constitutes reasonable time is ordinarily a decision for the trier of fact, but it noted that "when the facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court." *Id*. at 879 (citation and internal quotation marks omitted).  Furthermore, the court noted that Florida courts have interpreted "prompt" differently when damage was caused by a known event such as a hurricane or when an insured was on-site when readily apparent issues developed. *Id.* at 879-80.

The *Yacht Club* Court held that the insured's notice was untimely as a matter of law because the evidence established that immediately after the hurricane, the insurer knew of the damage caused by Hurricane Wilma, and even set aside a special assessment to address the damage. *Id.*  The court concluded that these facts alone were sufficient to "lead a reasonable and prudent man to believe that a claim for damages would arise." *Id.*  (*quoting Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla. 3d DCA 1981)).  It then went on to notice that the insured later hired an engineering company which investigated the roof extensively providing additional information to the board about the damage to the roof, yet formal notice of the claim was provided to the insurer years later. *Id.* at 880-81.

Similarly, in *PDQ*, the Eleventh Circuit affirmed summary judgment granted in favor of the insurer based on failure to provide prompt notice.  In that case, the insured alleged that its apartment building was damaged by Tropical Storm Fay in August of 2008. *PDQ* at 847.  It was undisputed that notice was not provided to the insurer until six months later in February of 2009. *Id*.  The Eleventh Circuit found that "the district court did not err in concluding that no reasonable interpretation of the record created a genuine dispute of material fact concerning whether the notice concerning the Property was timely." *Id*. at 849.  In reaching that conclusion,

the court specifically noted that the insured was aware of the loss at the time of the occurrence, and could have provided notice to the insurer, but still failed to do so. *Id*.

More recently, in *Tamiami Condominium Warehouse Plaza Association, Inc. v. Markel American Ins. Co.*, 2020 WL 1692177, *2 (S.D. Fla. February 24, 2020), the Southern District (Judge Rodney Smith presiding) held, as a matter of law, that a seven-month delay in providing notice was not prompt since the insured was aware of damage to the insured property from the storm. Significant to the court's holding was that the insured had hired a roofing contractor to perform repairs shortly after the storm, yet notice was not made until several months thereafter. *Id.*

The reasoning and analysis set forth in the *PDQ*, *Yacht Club*, and *Tamiami* cases are applicable to the circumstances of this case. It is undisputed that Plaintiffs failed to comply with the prompt notice provision in the Policy and gave late notice as a matter of law. For the first time, on July 17, 2019, over 22 months from the date of the alleged loss, Plaintiffs, through their public adjuster, Everett Watson, gave notice of the loss to WWIC. (WWIC's SOF, ¶18, Ex. 5, Clarke Dep. at 11:1-2). Plaintiffs were aware of damage to the Property from Hurricane Irma within days after the storm. Specifically, Plaintiffs observed roof damage, interior damage, and damage to the signs on the building. (WWIC's SOF, ¶6, Ex. 2, L. Love Dep. at 22:11-23:9.)

According to Plaintiffs, the claim at issue "was turned in late" to WWIC because their public adjuster, Everet Watson, mistakenly believed he had reported the claim the same time that he reported the other claims for Plaintiffs' other investment properties. (WWIC's SOF, ¶15, Ex. 2, L. Love Dep. at 29:11-30:7; 33:5-21). Mr. Watson, testified that it was actually Mr. Love who mistakenly believed that he had assigned the claim at issue to Mr. Watson, but did not do so until July 2019. (WWIC's SOF, ¶16, Ex. 3, Watson Dep. at 26:1-27:4; 34:1-8.) Whether it was a

mistake by Plaintiffs or their public adjuster, Plaintiffs concede that the claim should have been reported in 2017:

> Q. You agree with me that since you knew there was damage immediately after the storm, it should have been reported back in 2017, right?

> A. Yes.

(WWIC's SOF ¶17, Ex. 2, L. Love Dep. at 33:5-8.)

Courts applying Florida law have found much less significant delays - even as short as two months - to be untimely as a matter of law. *See, e.g.*, *Waldrep*, 400 So. 2d at 785 (two months); *Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 5 (1st Cir. 1998) (two months); *Cosmopolitan Mut. Ins. Co. v. Midtown Corp.*, 200 So. 2d 644, 644 (Fla. 3d DCA 1967) (four months); *Ro–Ro Enter., Inc. v. State Farm Fire & Cas. Co.*, No. 93-1754-CIV, 1994 WL 16782171, at \*4 (S.D. Fla. June 22, 1994) (four months); *PDQ*, 566 Fed. Appx. At 849 (six months); *Tamiami*, \*2 (2020 WL 1692177) (seven months). Here, Plaintiffs' notice of over 22 months after the loss was untimely as a matter of law.

## V. Plaintiffs cannot Rebut the Presumption of Prejudice to WWIC.

Because Plaintiffs breached the Policy by providing late notice, prejudice to WWIC is presumed. *De La Rosa v. Florida Peninsula Ins. Co.*, 246 So. 3d 438, 441 (Fla. 4th DCA 2018) (When an insured breaches the notice provision of the insurance policy, "prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice.") (citation omitted). The burden is on the insured "to show lack of prejudice if its insurer lost the opportunity to investigate the facts of the claim." *Id.* The purpose of the policy post-loss conditions is to provide the insurer with the independent means to adjust the claim, "as opposed to relying solely on the representations of the insured." *See United Prop. & Cas. Ins. Co. v. Conception*, 83 So. 3d 908, 910 (Fla. 3d DCA 2012). The purpose of the

"prompt notice" provision "is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *Laster v. U.S. Fid. & Guar. Co.*, 293 So.2d 83, 86 (Fla. 3d DCA 1974) (quotation omitted); *see also Yacht C*lub, 599 Fed. Appx. At 881 (same).

Here, WWIC's late notice hampered WWIC's ability to make a timely investigation.  As testified by Plaintiffs and their public adjuster, numerous repairs were made to the roof prior to providing notice to WWIC.  Plaintiffs called a roofer within months of Hurricane Irma to make repairs and to stop the interior leaking.  (WWIC's SOF, ¶10, Ex. 2, L. Love Dep. at 24:17-21.) "Months later," the leaking into the interior started again, so Plaintiffs contacted a roofer to, once again, fix the issue.  (WWIC's SOF, ¶11, Ex. 2, L. Love Dep. at 27:7-13.)  Plaintiffs also made repairs to an air conditioning unit because it was damaged by Hurricane Irma.  (WWIC's SOF, ¶10, Ex. 11, L. Love Dep. at 27:22-28:8.)   Likewise, repairs were later made to the interior, including replacement of ceiling tiles, drywall, and flooring.  (WWIC's SOF, ¶12, Ex. 2, L. Love Dep. at 30:19-31:15.)

The fact that Plaintiffs had incurred thousands of dollars of repairs to the roof (on multiple occasions) prior to any inspection by WWIC (or anyone else) to assess the extent of the damage interfered with WWIC's ability to investigate the claim.  Indeed, WWIC's independent adjuster, David Stubbs, testified at his deposition in regards to his inspection of the Property in August 2019, as follows:

> Q.     And you said you did not see any wind related damages; is that correct?
>
> A.     Correct.  Yes, Because the area that was being claimed as wind damaged was already repaired.  So there was nothing for me to see.

> Q.      What about the photos that you said you received that showed the roof in its pre-loss condition?   Did any of those show wind damage in the photographs?
>
> A.      No ma'am.  No.  There were no signs of any wind damage to the roof.  It just showed signs of, you know, aging, you know, cracking of the roofing materials, and that was, that was pretty much about all I saw.  The PA was supposed to provide photos after that showing actual wind damage to the roof, but I never received anything.

(WWIC's SOF, Ex. 6, Stubbs Dep. at 13:23-14:13.)

Likewise, Mr. Stubbs testified that other repairs were made, such as replacement of ceiling tiles, patching of ceiling drywall, and replacement of carpet, but the damaged items were discarded and no photographs were provided showing the damage prior to repair.  (WWIC's SOF, Ex. 6, Stubbs Dep. at 15:14-27:14.)   These actions, absent any photographs or other documentation showing the damage, made it impossible to determine whether such damage ever existed.

WWIC's corporate representative, at her deposition, was asked to provide the facts supporting WWIC's affirmative defense pertaining to Plaintiffs' post-loss duty failures, and testified in detail, as follows:

> Q.      …. My question is what facts support this defense?
>
> A.      The fact that the, again, the claim was reported 22 months after Hurricane Irma.  The repairs were made prior to Western World's inspection and documents regarding the repairs were never provided to Western World despite us asking on several occasions.  Western World, we were not able to inspect the damages claimed, again, since they were already repaired, nor were we able to investigate the specific repairs made since those documents were not provided to us.  We were also unable to determine any damage that was caused by Hurricane Irma to the extent of any damages caused by Hurricane Irma and essentially whether they were damages existing prior to Irma or after Hurricane Irma until July, 2019.

*  *  *

11

Q.     Can you tell me how Western World was prejudiced as a result of those post loss duty failures?

A.     Yes.  Due to the delayed reporting, Western World, we were unable to determine if any damage was caused by Hurricane Irma, the extent of any damage caused by Hurricane Irma and whether any damage occurred before Irma or after Irma until July, 2019, due to the unrelated cause of loss or due to the failure to make adequate repairs to the property.

In addition, the failure to provide a sworn proof of loss and other documentation did prevent Western World from further investigating, you know, scope and amounts claimed by the insured for this loss.

(WWIC's SOF, Ex. 5, Clarke Dep. at 27:21-28:11; 35:5-20.)

Thus, WWIC was prejudiced by not being able to investigate the damages and participate in the repairs of those damages.  *See, e.g., Yacht Club*, 599 Fed. Appx. at 881 (finding that the fact that The Yacht Club undertook certain repairs before making a claim with the insurer prejudiced the insurer by impeding the insurer's ability to investigate prior to the repairs and to participate in the repair of the damages).

Plaintiffs cannot rebut the prejudice to WWIC because the various repairs cannot be undone, and it is impossible to go back in time to observe and document the damages which actually occurred immediately after Hurricane Irma.  And again, no photographs or other documentation showing damage to the discarded and/or repaired property were ever provided. Significantly, when Mr. Love was asked whether he agreed that WWIC was prejudiced due to the late notice, he testified as follows:

Q.     Do you agree that Western World was prejudiced as a result of the late reporting of the claim?

A.     I don't know the answer, sir.  Watson handled most of my stuff for me, and so whatever he said that's what I go along with.

Q.     Let's put it this way:  You don't have anything that you can direct me to as to the Plaintiff to say that no, I don't believe Western World was

prejudiced even though they weren't given notice 22 months later, right?  You can't provide that to me, right?

>    A.    I don't know what the answer is.

(WWIC's SOF, Ex. 2, L. Love Dep. 45:23-46:8.)

Accordingly, because the notice to WWIC was late as a matter of law and Plaintiffs are unable to rebut the prejudice presumed to WWIC (as Plaintiffs concede), summary judgment should be granted in WWIC's favor.

## VI.    **Plaintiffs' Failure to Provide a Signed, Sworn Proof of Loss within 60 Days of WWIC's Request Compounded the Prejudice to WWIC.**

In addition to the providing severely late notice to WWIC of the claim, Plaintiffs then failed to provide a signed, Sworn Proof of Loss and other documentation, in contravention of the Policy.  As set forth above, the Policy requires, as follows:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

* * *

**E.  Loss Conditions**

* * *

**3.  Duties In The Event Of Loss Or Damage**

**a.**  You must see that the following are done in the event of loss or damage to Covered Property:

* * *

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

* * *

Plaintiffs were first asked to provide the Sworn Proof of Loss and supporting documentation on November 4, 2019.  (WWIC's SOF, ¶23, Ex. 5, Clarke Dep. at 20:9-21:1; Ex. 4 to Clarke Dep.)  The request was then repeated on January 7, 2019, when WWIC emailed Plaintiffs' public adjuster.  (WWIC's SOF, ¶24, Ex. 5, Clarke Dep. at 21:18-22:3.)  And even

when the claim was denied on March 5, 2020, WWIC provided one more opportunity to comply within 30 days.  (WWIC's SOF, ¶27, Ex. 5, Clarke Dep. at 22:16-21; Ex. 5 to Clarke Dep.)  Notwithstanding the foregoing requests, Plaintiffs failed to provide a Sworn Proof of Loss and chose, instead, to file suit.  (WWIC's SOF, ¶28, Ex. 2, L. Love Dep. 49:9-12; 64:4-24; Ex. 3, Watson Dep. at 30:13-31:15; Ex. 5, Clarke Dep. at 21:2-12; Ex. 6, Stubbs Dep. at 32:15-19;.)[1]

The failure to provide the Sworn Proof of Loss and supporting documentation further compounded the prejudice that already existed to WWIC as a result of the late notice.  WWIC was unable to ascertain the specific damages claimed by Plaintiffs, the scope of that damage, and then the potential need for additional investigation as to the cause and scope of those damages.  *See* WWIC's SOF, Ex. 5, Clarke Dep. at 35:5-20 ("In addition, the failure to provide a sworn proof of loss and other documentation did prevent Western World from further investigating, you know, scope and amounts claimed by the insured for this loss.").  Again, Plaintiffs cannot rebut this presumed prejudice.  *See New South Communications, Inc. v. Houston Casualty Co.*, 835 Fed. Appx. 405, 413 (11th Cir. 2020) (holding that the defendant has established that the insureds materially breached the proof-of-loss condition and holding that a presumption of prejudice existed).  Summary judgment in WWIC's favor is warranted for this additional reason.

**VII.** **Plaintiffs cannot Recover Replacement Cost Value ("RCV") and cannot Substantiate the Calculation for Actual Cash Value ("ACV") of the Cost to Repair the Damages Allegedly Caused by Hurricane Irma.**

The Policy prohibits the recovery of replacement cost value until replacements are actually made, and only if the insured gives notice within 180 days after the loss.  The Policy states in pertinent part:

---

[1] It is important to note that Plaintiffs also failed to provide any Sworn Proof of Loss before re-filing their action in this case (after the voluntary dismissal).  By that time, Plaintiffs were well aware of WWIC's affirmative defenses, including the failure to provide a Proof of Loss.

14

### 3.  Replacement Cost

* * *

    **c.**  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.**  We will not pay on a replacement cost basis for any loss or damage:

        **(1)** Until the lost or damaged property is actually repaired or replaced; and

        **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

* * *

(WWIC's SOF, Ex. 1, Policy at 68.)

Replacement cost "is measured by what it would cost to replace the damaged structure on the same premises." *Davis v. Allstate Ins. Co.*, 781 So.2d 1143, 1144 (Fla. 3d DCA 2001).  On the other hand, actual cash value is "synonymous with 'market value' or 'fair market value.'" *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997).  "Fair market value accounts for the property's depreciated condition." *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008).

Under a replacement cost policy, "following a loss, both actual cash value and the full replacement cost are determined. The difference between those figures is withheld as depreciation until the insured actually repairs or replaces the damaged structure." *Goff*, 999 So. 2d at 690.[2]  Florida courts have recognized that these types of contractual provisions are both common and valid. *Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850, 852 (Fla. 4th DCA 2011).  Similarly, in *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins.*

---

[2] The value of non-damaged items is irrelevant to an ACV determination. *See New York Cent. Mut. Fire Ins. Co. v. Diaks*, 69 So. 2d 786, 789 (1954) (citations omitted) ("The value to be determined [when calculating the actual cash value] is the value of the particular property which was lost or destroyed.").  Accordingly, any ACV recovery would be limited to only those items that suffered direct physical loss or damage.

*Corp.*, No. 10-23685-CIV, 2012 WL 13012457 *5 (S.D. Fla. May 8, 2012) the Court explained "[h]ere, where repairs have yet to occur, the policy by its plain language does not afford replacement-cost-value coverage."

Here, it is undisputed that the repairs to the damaged property have not been completed to date.  (WWIC's SOF, ¶¶13, 32, Ex. 4, G. Love Dep. at 6:8-18; 7:10-13; 6:20-22.)  Although he has not been properly disclosed as an expert, Plaintiffs claim to be relying upon Mr. Watson to testify to damages.  (WWIC's SOF, Ex. 2, L. Love Dep. at 58:19-59:5.)  But, despite the Policy language and Florida law, Mr. Watson has submitted only the RCV for the roofs and other portions of the building that have not yet been replaced and/or repaired.  (WWIC's SOF, Ex. 3, Watson Dep. at 42:16-19.)  Under the plain language of the Policy, Plaintiffs' attempt to recover the RCV is prohibited not just because Plaintiffs have not repaired or replaced the roofs and other damaged property, but because they have failed to give notice of their intent to seek RCV within 180 days as required under the Policy.  (WWIC's SOF, Ex. 5, Clarke Dep. at 11:1-2; 37:6-12.)

Plaintiffs' failure to present an ACV figure from an expert witness (or any other witness for that matter), is yet another basis to grant WWIC summary judgment, as Plaintiffs cannot prove the amount of damages which purportedly resulted from the breach.  The party suing for damages "has the burden of proof of showing the amount of loss in a manner in which the jury . . . can calculate the amount of the loss with a reasonable degree of certainty.  An allowance for damages cannot be based on guess work." *Matthews v. State Farm Fire & Cas. Co.*, 500 F. App'x 836, 841 (11th Cir. 2012); *see also Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006)); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 666 (11th Cir. 2010); *Ctr. Hill Courts Condo. Ass'n v. Rockhill Ins. Co.*, No. 19-cv-80111-

BLOOM/Reinhart, 2020 U.S. Dist. LEXIS 14012, at *14 (S.D. Fla. Jan. 27, 2020) (Expert opinion evidence is required for computation of damages using such Xactimate estimates because "[t]he average lay person is generally unfamiliar with methods and procedures of insurance adjusters used to create an estimate.").

Plaintiffs have neither admissible evidence nor expert testimony to substantiate the calculation for the ACV of the cost to repair the damages allegedly caused by Hurricane Irma. Failure to prove the specific, additional amount owed under the Policy precludes any award, as this Court is not permitted to speculate as to damages. *See Yaniz v. Wright National Flood Ins. Co.*, 446 F. Supp. 3d 1015, 1028 (S.D. Fla. Mar. 4, 2020) (citing *Mahood v. Omaha Prop. & Cas.*, 174 F. Supp. 2d 284, 293 (E.D. Pa. 2001) ("The court may not guess the reasonable price for repairs covered under the policy.")).  The absence of expert testimony is fatal to Plaintiffs' case.  Accordingly, WWIC is entitled to summary judgment for this additional reason.

**VIII.** **No Ordinance or Law-related Expenses have been Incurred and Therefore are not Recoverable under the Policy**.

Coverage for loss caused by enforcement of ordinance or law is provided in the Policy, in relevant part, as follows:

**e.  Increased Cost Of Construction**

\* \* \*

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

\* \* \*

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

17

> **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years.  We may extend this period in writing during the two years.

* * *

(WWIC's SOF, Ex. 1, Policy at 58-59.)

Courts have repeatedly enforced similar law and ordinance provisions.  *See, e.g.*, *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F.App'x 659, 665 (11th Cir. 2010) (insured was "not entitled to law and ordinance damages as it never repaired the property or incurred increased damages due to the enforcement of laws or ordinances"); *Orleans Parrish School Board v. Lexington Ins. Co.*, 118 So. 3d 1203 (La. App. 4th Cir. 2013) (enforcing similar provision and holding that insured not entitled to recover increased cost of construction); *Edgewood Manor Apt. Homes LLC v. RSUI Indemnity Co.*, 782 F. Supp. 2d 716, 723, 729 (E.D. Wis. 2011); *Snoqualmie Summit Inn, Inc. v. Travelers Prop. & Cas. Co. of America*, No. CV06-0517 MJP, 2007 WL 709297 (W.D. Wash. Mar. 5, 2007); *Monarch, Inc. v. St. Paul Property & Liability Ins. Co.*, No. A. 03-CV-0054, 2004 WL 1717618 (E.D. Pa. Jul. 30, 2004).

It is undisputed that the damages Plaintiffs seek in this case are for repairs that have not been performed to date.  The foregoing provision prevents reimbursement under the Policy for Ordinance or Law Coverage if the repair or replacement is not performed within two years of the loss or damage.  Almost four years have elapsed since the alleged loss or damage to the Property occurred.   Accordingly, Plaintiffs are now precluded from seeking Increased Cost of Construction coverage as a matter of law.  *See Oriole Gardens*, 875 F. Supp. 2d at 1385 (granting summary judgment to insurer precluding recovery for "increased costs of construction" (i.e., Ordinance or Law), as a result of the insured's failure to repair or replace the property).

## CONCLUSION

WHEREFORE, based on the foregoing, Defendant, WESTERN WORLD INSURANCE COMPANY, respectfully requests entry of judgment in its favor on the issue of late notice, failure to provide a Sworn Proof of Loss, RCV/ACV recovery, Plaintiffs' inability to prove damages, and the exclusion of Ordinance or Law related damage, and all other relief this Court deems just and proper under the circumstances.

BUTLER WEIHMULLER KATZ CRAIG LLP

/s/Troy J. Seibert, Esq.

**TROY J. SEIBERT, ESQ.**
Florida Bar No.:  0084668
tseibert@butler.legal
**VINCENT A. FERNANDEZ, ESQ.**
Florida Bar No.:  1004601
vfernandez@butler.legal
Secondary: msmalls@butler.legal
                srivera@butler.legal
                mmartinez@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:     (813) 281-1900
Facsimile:      (813) 281-0900
*Attorneys for Defendant,*
*Western World Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

DAVID LOW & ASSOCIATES, P.A.
Sarah K. Schachere, Esq.
David Low, Esq.
2101 West Commercial Boulevard, Suite 2800
Fort Lauderdale, FL  33309-3070
*Counsel for Plaintiffs, Lesel Love, Jr., and Gwendolyn Love*

Via CM/ECF on August 20, 2021.

/s/Troy J. Seibert, Esq.

**TROY J. SEIBERT, ESQ.**

19